UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X  <u>For Online Publication Only</u>
FRONTSEAT, LLC,

          Appellant,

                                  **<u>ORDER</u>**
          v.                        18-CV-2208 (JMA)

RICHARD L. STERN,
*Chapter 7 Trustee of the Estate of*
*150 Fulton Property, Inc.*,

          Appellee.
----------------------------------------------------------------------X

**APPEARANCES:**

Fred Stevens
Andrew S. Richmond
Klestadt Winters Jureller Southard & Stevens LLP
200 West 41st Street, 17th Floor
New York, New York 10036
      *Attorneys for Appellant Frontseat, LLC*

Scott Krinsky
Backenroth Frankel & Krinsky, LLP
800 Third Avenue, 11th Floor
New York, New York 10022
      *Attorney for Appellee Richard L. Stern, Trustee*

**AZRACK, United States District Judge:**

      Appellant Frontseat LLC ("Frontseat") appeals the March 29, 2018 Judgment of the Bankruptcy Court (Trust., J.). For the reasons set forth below, the Bankruptcy Court's judgement is AFFIRMED.

## I.  BACKGROUND

      Familiarity with the relevant facts and procedural history, including the Bankruptcy Court's February 14, 2018 Order is assumed. Frontseat acquired tax liens that Nassau County had placed on 150 Fulton Street, Farmingdale, New York (the "Property"), which was owned by Debtor 150

Fulton Property, Inc. ("Debtor"). Under the Nassau County Administrative Code ("NCAC"), a lien holder such as Frontseat is able to acquire title to such real property if the tax liens remain unpaid and the lien holder complies with various requirements of the NCAC, including its requirements for sending Notices to Redeem to owners, occupants, and other interested parties. See NCAC § 5-51.0.

After Frontseat obtained the deed to the Property from the Nassau County Treasurer pursuant to the NCAC, Debtor filed suit in state court alleging that Frontseat's deed was void because Frontseat failed to comply with the NCAC in obtaining the deed (the "State Court Action"). Richard Stern, the Chapter 7 Bankruptcy Trustee of the Estate of 150 Fulton Property, Inc. (the "Trustee"), removed the State Court Action to Bankruptcy Court. The Honorable Alan S. Trust held a trial on the claims raised in the State Court Action as well as on a related fraudulent conveyance action the Trustee brought against Frontseat. After trial, the Bankruptcy Court held that Frontseat's deed to the Property was void because Frontseat failed to comply with the requirements of the NCAC. Accordingly, it was unnecessary for the Bankruptcy Court to reach the fraudulent conveyance claim.

Frontseat then filed this appeal.

## II. DISCUSSION

Frontseat raises two arguments on appeal. The Court finds neither argument to be persuasive.

### A. Standard of Review

District courts review a bankruptcy court's factual findings for clear error and its conclusions of law de novo. See In re Charter Commc'ns, Inc., 691 F. 3d 476, 483 (2d Cir. 2012).

2

A district court "'may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decisions below.'" Wenegieme v. Macco, 580 B.R. 17, 21 (E.D.N.Y. 2018) (quoting In re Miller, Nos. 08-CV-4305, 08-CV-4306, 2009 WL 174902, at *1 (S.D.N.Y. Jan. 26, 2009); Bristol v. DeRosa, No. 09-CV-3730), 2010 WL 3924911, at *2 (E.D.N.Y. Sept. 30, 2010)).

## B. The Bankruptcy Court Had Jurisdiction to Enter a Final Judgment

On appeal, Frontseat argues that the State Court Action was a non-core proceeding and that Frontseat did not consent to the Bankruptcy Court entering final judgment on the claims alleged in that action. For the reasons stated below, the Court finds that the Bankruptcy Court had jurisdiction to enter a final judgment.

Consent to adjudication by a bankruptcy court can be either express or implied. Wellness Int'l Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1947-48 (2015). The implied consent standard adopted by the Supreme Court in Wellness Int'l Network "increase[es] judicial efficiency and check[s] gamesmanship." Id.

Frontseat maintains that it did not consent to the Bankruptcy Court entering final judgment on the claim in the State Court Action. In support, Frontseat relies on a "Statement of Core/Non-Core Jurisdiction" that it filed after the State Court Action was removed to Bankruptcy Court. In that document, Frontseat stated that the causes of action in the state court action "are non-core" and that Frontseat did not "consent to entry of final orders and judgment by this Court in determining such causes of action." (A000038.)

Frontseat, however, subsequently requested in its Post-Trial Brief that "Plaintiff's complaint should be dismissed with prejudice, or final judgment should be entered for Defendant Frontseat on those claims." (A0000494). The "claims" to which Frontseat was referring clearly

3

included the state law claim that Frontseat now contends was non-core. (A0000493.) These statements in Frontseat's Post-Trial Brief were sufficient to establish Frontseat's express (and, at the very least, implied) consent to the Bankruptcy Court entering a final order on the claims raised in State Court Action. See In re C & M Investments of High Point Inc., No. 13-10661, 2015 WL 5120819, at *1 n.1 (Bankr. M.D.N.C. Aug. 26, 2015) (finding consent for Bankruptcy Court to enter a final judgment where the defendants' answer "generally denied that [the Bankruptcy Court] has constitutional authority to enter a final order," but the defendants subsequently moved for summary judgment before the Bankruptcy Court); In re Carter, 506 B.R. 83, 85–86 (Bankr. D. Ariz. 2014) (finding that Bankruptcy Court had authority to enter final judgment where the defendant asserted in its answer and summary judgment papers that bankruptcy court lacked authority to enter a final judgment but, also in the same motion papers, asked the Bankruptcy Court to enter judgment in its favor and dismiss the adversary proceeding with prejudice). Notably, Frontseat's reply brief in this Court never even attempts to explain why the representations made in its Post-Trial Brief did not constitute consent to the Bankruptcy Court's jurisdiction to enter a final judgment on the claims in the State Court Action.

Because the statements in Frontseat's Post-Trial brief were sufficient to constitute consent to the Bankruptcy Court's authority to issue a final judgment, it is unnecessary to even address whether, as the Bankruptcy Court determined, the State Court Action was, in fact, a core proceeding. Moreover, even assuming arguendo that the claims in the State Court Action were non-core and that Frontseat did not consent to the Bankruptcy Court issuing a final judgment for that action, this Court would simply treat the Bankruptcy Court's order as Proposed Findings of Fact and Conclusions of Law and Frontseat's appeal to this Court as objections to those proposed findings and conclusions. See December 5, 2012 Standing Order, In the Matter of the Referral of

4

Matters to the Bankruptcy Judges issued in the Eastern District of New York ("The district court may treat an order or judgment of the bankruptcy court as proposed findings of fact and conclusions of law in the event that the district court concludes that a bankruptcy judge could not enter that order or judgment consistent with Article III of the United States Constitution.") (https://img.nyed.uscourts.gov/files/general-ordes/Order12052012.pdf) (last visited May 31, 2020); cf. Exec. Benefits Ins. Agency v. Arkison, 573 U.S. 25, 39 (2014) (noting that when a bankruptcy court lacks authority to enter a final judgment, some districts "relabel the bankruptcy order as mere proposed findings of fact and conclusions of law"). Even under that scenario, this Court would adopt the Bankruptcy Court's order and would reach the same conclusions as the Bankruptcy Court.

### C. **Frontseat Failed to Strictly Comply with the NCAC**

NCAC § 5-51.0(c) states that "notice shall be served on a nonresident owner as appearing of record of class one lot or parcel . . . owners appearing of record of other lots and parcels and other parties in interest as specified in [NCAC § 5-51(a)] by certified mail, postage paid, return receipt requested, showing address where delivered, and addressed to such person's last known address." NCAC 5-51.0(a) specifies that "[t]he holder of any tax lien which is not satisfied, shall give notice to the occupant, owner in fee, . . . ., mortgagee [and certain other parties]."

Frontseat sent a Notice to Redeem to "150 Fulton Property Inc., 20 Gwynne Road, Melville, NY 11787." However, the Bankruptcy Court concluded that this was not the appropriate address to serve the Debtor under § 5-51.0, which required Frontseat to serve the Debtor at the Property Address, 1050 Fulton Street, Farmingdale, New York. On appeal, Frontseat does not challenge that aspect of the Bankruptcy Court's order. Frontseat, however, argues that it did, in fact, serve the Debtor at the Property Address because it sent a Notice to Redeem addressed to

"Current Tenant/Occupant, 150 Fulton Street, Farmingdale, NY 11735." Frontseat also sent a Notice to Redeem to Signarama, an occupant of the Property, at the Property Address. At the time, a gas station also occupied the Property. (A0000328, 330, 365, 407.) The gas station signed for the mailing addressed to "Current Tenant/Occupant." (Reply Br. at 8, ECF No. 7.) In total, Frontseat sent two Notices to Redeem to the Property, one notice was addressed to Signarama and the other notice was addressed to "Current Tenant/Occupant." At trial, a witness from Frontseat admitted that it was aware that the gas station and Debtor were in a "heated legal battle and it would be ridiculous to expect the gas station to forward mail to the Debtor." (A0000407.)

The issues raised by Frontseat's appeal are:

(1) did NCAC § 5-51.0 require Frontseat to explicitly name the Debtor as the addressee on the Notice to Redeem that was sent to "Current Tenant/Occupant" at the Property Address, or was the notice, as addressed, sufficient under the NCAC?

(2) even if the NCAC did not require the notice to Debtor be expressly addressed to "1050 Fulton Property, Inc.," did Frontseat still fail to comply with the NCAC because it failed to send separate notices to both the Debtor and the gas station at the Property Address; and

(3) did Frontseat waive its argument that the NCAC did not require it to explicitly name the Debtor as the addressee?

**1. Waiver**

In the parties' Joint Pretrial Memorandum, Frontseat did not raise the argument that the Notice to Redeem sent to the Property Address was sufficient under the NCAC to serve the Debtor notice even though that notice only named "Current Tenant/Occupant" rather than the Debtor. (A000080–81.) In the section Defendant's "Proposed Issues of Law," Frontseat simply argued that service of the Notice to Redeem "upon 150 Fulton Property, Inc. at the corporation's registered address for service of process [i.e., 20 Gwynne Road, Melville, NY 11787] was legally sufficient service upon the 'occupant and owner in fee.'" (A000052.) In its Post-Trial Brief, Frontseat proceeded to argue, in a footnote, that "[s]ervice of the Notice to Redeem on the 'Current

6

Tentant/Occupant' at 150 Fulton would constitute proper service under the NCAC even without stating the Debtor's legal name." (A0000496.)

Mentioning this argument in a footnote in a post-trial brief was insufficient to properly raise this argument to the Bankruptcy Court or to preserve this argument for appeal. Notably, on appeal, Frontseat stresses that the Bankruptcy Court did not expressly address this argument. Given the insufficient manner in which this argument was raised, the Bankruptcy Court was not required to address this argument. In any event, even if Frontseat sufficiently raised this argument concerning the NCAC before the Bankruptcy Court, this argument fails on the merits.

### 2. Frontseat Failed to Strictly Comply with NCAC § 5-51.0

Again, NCAC § 5-51.0(c) states that "notice shall be served on a nonresident owner as appearing of record of [certain specified classes of properties] and owners appearing of record of other lots and parcels and other parties in interest as specified in [NCAC § 5-51(a)] by certified mail, postage paid, return receipt requested, showing address where delivered, and addressed to such person's last known address." And, NCAC 5-51.0(a) specifies that "[t]he holder of any tax lien which is not satisfied, shall give notice to the occupant, owner in fee, . . . ., mortgagee [and certain other parties]."

Frontseat asserts that because NCAC § 5-51.0 does not explicitly state that Frontseat was required to include the name of the owner on the envelope containing the Notice to Redeem, Frontseat had no obligation to do so. Frontseat stresses that NCAC § 5-51.0 only states that the certified mail must be "addressed to such person's last known address" and does not indicate that the owner or occupant needs to be identified by name on the mailing. Frontseat also points out that a different section of the NCAC, § 5-37.0—which addresses the notice requirement of the County to property owners—requires notice "to be sent by first class mail to the <u>name and address</u>

of the record owner or occupant and mortgagee . . ." NCAC § 5-37.0 (emphasis added). According to Frontseat, this explicit reference to "name" in § 5-37.0 indicates that the omission of that term in § 5-51.0 was intentional and, as such, it was unnecessary to include Debtor's name in the Notice to Redeem that was sent to "Current Tenant/Occupant."

The provisions of the NCAC at issue here are liberally construed in the owner's favor. Liotta v. L & L Assocs. Holding Corp., 23 Misc. 3d 1124(A), at *3, 886 N.Y.S.2d 67 (Sup. Ct., Nassau Cty. 2009); Glantz v. Scaduto, 96 Misc. 2d 1004, 1006, 410 N.Y.S.2d 215, 217 (Sup. Ct., Nassau Cty. 1978), aff'd sub. nom., Sweet v. Glantz, 69 A.D.2d 1025, 416 N.Y.S.2d 160 (App. Div. 2d Dep't 1979). And, strict compliance with those provisions is required. Weinstein v. All State Credit Corp., 31 N.Y.2d 835, 837 (1972). The legislative purpose of requiring service on certain parties is to "ensure" that those parties "are notified of a risk of divestiture of title to their property." Kese Indus. v. Roslyn Torah Found., 15 N.Y.3d 485, 492 (2010).

No court has squarely addressed the issues raised in this appeal or expressly discussed how the relevant terms and phrases in § 5-51.0 should be interpreted in this or an analogous context. However, two New York cases found that errors in the names to which Notices to Redeem were mailed, along with other deficiencies, rendered those Notices to Redeem deficient under the NCAC. See Clifford v. Seaman, 278 A.D. 667, 667, 102 N.Y.S.2d 769 (App. Div. 2d Dep't 1951), (stressing that the NCAC must be "strictly observed" and cancelling tax deed where, inter alia, "the name of the addressee, Tamplin, was defectively written, so that it could have been read as Tamolin, or Tamblin and, concededly, the notice which the envelope enclosed was never delivered to petitioner");[1] Lichtenstein v. Rocchio, 64 Misc. 2d 701, 705, 315 N.Y.S.2d 434, 438 (Sup. Ct.,

---

[1] Frontseat concedes that in Clifford, "the court held that the tax deed was cancelled for numerous reasons, only one of which was a defect in the name on the envelope." (Reply Br. at 10 n. 9.)

Nassau Cty. 1970) (voiding tax deed in light of the "cumulative effect of the irregularities" and noting that, <u>inter alia</u>, the notice named deceased husband rather than his wife).[2] Although these cases also included other deficiencies, they—along with the general principle of New York law that the relevant provisions of the NCAC are liberally construed in favor of the owner—are the most relevant authority before the Court on the issue at bar and indicate that the requisite mailing must include the recipient's name. By contrast, Frontseat does not cite to a single case under the NCAC that supports its view that the NCAC does not require the lien holder to identify the specific party to which the Notice to Redeem is being mailed.

While Frontseat contends that the plain language of § 5-51.0—particularly the phrase "addressed to such person's last known address"—compels reversal, § 5-51.0 is ambiguous. Section 5-51.0 also states that the "notice <u>shall be served on . . . owners . . . and other parties</u> in interest as specified in [NCAC 5-51.0] by certified mail . . . addressed to such person's last known address."[3] (Emphasis added). It is difficult to comprehend how a notice can be "served on" a particular party via mail if the party's name is not included on the mailing, especially when, as here, multiple parties have to be served at the same address. At the very least, the phrase "notice shall be served on . . . owners . . . and other parties in interest" is ambiguous. Although § 5-51.0(c) also states—without any explicit reference to a "name"—that the notice must be "addressed to such person's last known address," that phrase is also ambiguous when read in light of the other

---

[2] It is not clear from the decision in <u>Lichtenstein</u> whether the notice was sent to the deceased husband at the wife's last known address or to a different address.

[3] The use of the phrase "served on" in § 5-51.0 renders Frontseat's interpretive argument based on § 5-37.0 unpersuasive because § 5-37.0 requires that a notice "be sent by first mail" whereas § 5-51.0 employs different phrasing and also discusses "serv[ing] notice" on certain specific parties, language that is absent from § 5-37.0.

9

language in § 5-51.0(c).[4] These ambiguities must, in light of the authority cited above, be resolved in favor of the owner. Accordingly, the Court finds that §5-51.0 required Frontseat to include Debtor's name on the mailing.

Frontseat's reading of the statute would lead to absurd results and would be contrary to the purpose of § 5-51.0. See DeTroia v. Schweitzer, 87 N.Y.2d 338, 342 (1996) ("The ordinance should be interpreted to avoid this objectionable, absurd, anomalous and unjust result."); Med. Soc. of State of N.Y. v. State Dep't of Health, 83 N.Y.2d 447, 451, 633 N.E.2d 468, 470 (1994) ("The courts have repeatedly rejected statutory constructions that are unconscionable or antithetical to legislative objectives."). Allowing the mailing for the notice to state "Current Occupant/Tenant," rather than identifying the relevant party by name, greatly increases the likelihood that at least some interested parties, including the owner, will not receive a copy of the notice when multiple parties are entitled to be sent notice at the same address. Moreover, Frontseat's interpretation—which only requires that the street address, city, and zip code be included on the mailing for the notice—would lead to absurd results as it would allow a lien holder to satisfy NCAC § 5-51.0 by purposely including incorrect names on the mailing.[5] Frontseat's interpretation would have also allowed it to satisfy NCAC § 5-51.0 by serving Debtor at the Property Address with a mailing that only listed Signarama or the gas station tenant as the recipient. It is inconceivable that the legislature intended such absurdities. Relatedly, Frontseat's interpretation is contrary to the legislative purpose of the notice provisions in NCAC § 5-51.0—

---

[4] Arguably, it would be superfluous to include the term "name" in the final clause of this sentence in § 5-51.0(c) because the phrase "served on . . . owners and . . . other parties in interest" may necessarily imply that those parties will be named on the mailing.

[5] As the Trustee points out, opening mail addressed to another person can be a federal crime. See 18 U.S.C. §§ 1701, 1702, 1708.

namely, to "ensure" that interested parties "are notified of a risk of divestiture of title to their property." Kese Indus., 15 N.Y.3d at 492.

Furthermore, even if § 5-51.0 were not ambiguous, New York courts have recognized that "adherence to the letter of the statute will not be permitted to defeat the general purpose and manifest policy intended to be promoted, and that the court, in construing a statute, is not necessarily bound by literal language of a statute if it conflicts with the legislature's manifest intent." Lapolla v. Bd. of Ed. of City of New York, 195 Misc. 651, 656, 90 N.Y.S.2d 424, 429 (Sup. Ct., N.Y. Cty.) (citations omitted), aff'd sub nom. Lapolla v. Bd. of Educ. of City of New York., 275 A.D. 1038, 92 N.Y.S.2d 419 (App. Div. 1st Dep't 1949), aff'd sub nom. Lapolla v. Bd. of Educ. of City of New York, 301 N.Y. 580 (1950). As explained above, Frontseat's interpretation would lead to absurd results and conflict with the purpose of § 5-51.0.

Finally, as the Trustee correctly asserts, even if § 5-51.0 does not require the owner's name to be included on the mailing, Frontseat can still not prevail. NCAC § 5-51.0 required Frontseat to serve notice on both the owner of the property and any occupants of the Property. See NCAC § 5-51.0(c) ("[N]otice shall be served on . . . owners . . . and other parties in interest as specified in [NCAC 5-51.0] by certified mail . . . addressed to such person's last known address.") (emphasis added). Signarama and a gas station were both occupants of the Property. As such, Frontseat was required to serve notice on each of them as well as on the Debtor. However, Frontseat only served two Notices to Redeem at the Property—one addressed to Signarama and one addressed to "Current Tenant/Occupant." Section 5-51.0(c)'s requirement that "notice shall be served on [certain interested parties] by certified mail . . . addressed to such person's last known address" is, at the very least, ambiguous with respect to the question of whether separate notices need to mailed to each interested party entitled to notice under the Code when those parties share the same address.

11

Interpreting this ambiguous provision in a manner that would allow multiple, distinct parties (such as the Debtor and the gas station) to be served with a single notice addressed to "Current Tenant/Occupant" would lead to absurd results and greatly increase the likelihood that all parties entitled to notice would not receive it. That absurdity is highlighted by the specific facts of this case where Frontseat was aware that the Debtor and the gas station had an adversarial relationship and were in a heated legal battle at the time. Relatedly, interpreting the NCAC in a manner that would permit Frontseat to satisfy § 5-51.0 by serving a single notice on both the Debtor and the gas station would contravene the purpose of § 5-51.0 and ignore the requirement that the NCAC be liberally construed in favor of the owner and occupants. Accordingly, the Court concludes that Frontseat's failure to serve separate Notices to Redeem on both the gas station and the Debtor at the Property Address is fatal and is a further reason to affirm the Bankruptcy Court's judgment. It must also be stressed that Frontseat elected to ignore this important issue in its reply brief.

### III.  CONCLUSION

For the reasons set forth above, the Bankruptcy Court's Order and Judgment are AFFIRMED. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated:  May 31, 2020
          Central Islip, New York

                                                                   /s/ (JMA)
                                                              JOAN M. AZRACK
                                                              UNITED STATES DISTRICT JUDGE